# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DAVID J. HIRSCHFELD & TAMI L. HIRSCHFELD, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) Docket no. 1:18-cv-00203-GZS |
| v. | ) <br> ) |
| ATHENA POINT LOOKOUT, LLC, | ) <br> ) <br> ) |
| Defendant. | |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant's Motion to Dismiss (ECF No. 18), which seeks dismissal of Plaintiffs' Amended Complaint (ECF No. 17) for failure to state a claim upon which relief can be granted. Having reviewed the Motion, as well as the related memoranda filed by both parties (ECF Nos. 21 & 22), the Court hereby GRANTS the Motion.

### I. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, we 'perform [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (alteration in original) (quoting Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the court "must

determine whether 'the factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 224 (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678).

"Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotations omitted). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13. As here, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998). With these principles in mind, the Court now outlines the well-pled factual allegations.

## II. FACTUAL BACKGROUND

Beginning in January 2018, and continuing through April 6, 2018, Plaintiffs David and Tami Hirschfeld (together, "Plaintiffs"), engaged in negotiations to buy property from Defendant Athena Point Lookout, LLC ("Defendant"). The property, known as Point Lookout Resort & Conference Center ("Point Lookout"), is located in Northport, Maine. On April 4, 2018, Plaintiffs tendered their "final offer" of $6,500,000 for the property. (Am. Compl. ¶ 7) The next day, April 5, after Defendant had notified Plaintiffs it would be accepting another offer, Plaintiffs' agent called Defendant's agent and asked whether an increased bid of $7,000,000 would make a difference. Defendant's agent responded "I think that might." (Id. at ¶ 8) Plaintiffs' agent then

asked Defendant's agent "[i]f I get them up to $7,000,000, you aren't going to shop this offer, are you?" (Id.) Defendant's agent replied "definitely not!" (Id.)

Following that conversation, Defendant prepared a two-page letter of intent ("LOI")—appended to the Amended Complaint as Exhibit A—and sent it to Plaintiffs. Upon doing so, Defendant advised Plaintiffs that if Plaintiffs signed the LOI, Defendant would likewise sign, and the parties would "have a deal." (Id. at ¶ 9) The LOI enumerates a purchase price of $7,000,000, provides a description of the property, outlines procedures for, among other things, due diligence, and states the following "Definitive Agreement" between the parties:

> The Parties will negotiate a definitive Purchase and Sale Agreement (the "PSA"), which will provide for A) the insurable transfer of the Portfolio free and clear of all liens and B) the assignment of all leases covering tenants in possession, and all contracts and reservations. Buyer and Seller will make best efforts to execute a Purchase and Sale Agreement within (15) days of this agreement.

(Ex. A to Am. Compl. (ECF No. 17-1)) It also specifies, just above the signature lines, that "Seller and Buyer acknowledge that this proposal is not binding as there are multiple offers being considered and is intended as the basis for the preparation of documents for the definitive purchase and sale agreement." (Id.) On April 5, 2018, Plaintiffs and Defendant signed the LOI.

On April 6, 2018, Defendant twice represented to Plaintiffs that the parties "had a deal and that [it] would be preparing the purchase and sale agreement." (Am. Compl. ¶ 13) Plaintiffs then, "[i]n reliance upon the Defendant's representations that the parties had a deal," reduced the price of land they already had listed for sale in Montana.[1] (Id. at ¶ 14) Plaintiffs' goal in doing so was to raise money for the Point Lookout purchase price. However, three hours after representing that

---

[1] Drawing all reasonable inferences in Plaintiffs' favor, as the Court must, the Amended Complaint also seems to allege that Plaintiffs incurred "interest costs on money in escrow" in reliance on Defendant's representations. See Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (in reviewing a motion to dismiss the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs"). (Am. Compl. ¶ 48)

it was preparing the purchase and sale agreement, Defendant informed Plaintiffs that it had entered into a contract to sell the property to another party who had offered more money. Plaintiffs then advised Defendant that they considered the LOI to be a binding contract. In response, Defendant stated "we get out of these all the time." (Id. at ¶ 16) On April 23, 2018, Plaintiffs initiated this litigation in state court. Defendant removed the case to this Court on May 18, 2018.

## III. DISCUSSION

Based on the foregoing factual allegations, Plaintiffs argue that Defendant violated state law. Specifically, Plaintiffs' Amended Complaint lists six claims: Specific Performance (Count I), Breach of Contract (Count II), Declaratory Relief (Count III), Promissory Estoppel/Equitable Estoppel (Count IV), Negligent Misrepresentation (Count V), and Fraudulent Misrepresentation (Count VI).[2] For the reasons explained below, the Court concludes that the facts as pled are insufficient to state any of these claims.

### A. Breach of Contract & Declaratory Relief (Counts II & III)

Plaintiffs first assert that the LOI was an enforceable contract for the sale of land and that Defendant breached it by accepting another offer for Point Lookout. The unambiguous, plain language of the LOI defeats this claim. See Moody v. State Liquor & Lottery Comm'n, 843 A.2d 43, 49 (Me. 2004) ("The question of whether a contract is ambiguous, and if unambiguous, the interpretation of that contract, are questions of law").

Under Maine law, the elements of breach of contract are "(1) breach of a material contract term; (2) causation; and (3) damages." Me. Energy Recovery Co. v. United Steel Structures, Inc., 724 A.2d 1248, 1250 (Me. 1999). "Contract language is ambiguous when it is reasonably susceptible of different interpretations." Portland Valve Inc. v. Rockwood Sys. Corp., 460 A.2d

---

[2] The Court discusses and considers Plaintiffs' request for Specific Performance (Count I) in connection with related substantive claims (Counts II, III & IV).

4

1383, 1387 (Me. 1983). Here, the LOI is not susceptible of different interpretations. See id. It is clear from the language of the entire document that it did not establish a duty for Defendant to sell Plaintiffs the property. See id. ("The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument"). Rather, the "Definitive Agreement" in the LOI was that the parties would "negotiate a definitive Purchase and Sale Agreement" with the further caveat that even that understanding "is not binding as there are multiple offers being considered." (Ex. A to Am. Compl.) Therefore, as written, the LOI did not create any binding terms that Defendant could have breached. On that ground, the breach of contract claim must be dismissed. See Me. Mun. Emps. Health Tr. v. Maloney, 846 A.2d 336, 338 (Me. 2004) (dismissing breach of contract claim where written instrument did not create duty allegedly breached); Moody, 843 A.2d at 49 (dismissing breach of contract claim where contract was unambiguous and the defendant could not have breached it as a matter of law). Likewise, given the LOI's unambiguous terms to the contrary, Plaintiffs fail to state a claim for a declaratory judgment that the LOI gives them a right to purchase Point Lookout.

### B. Promissory Estoppel & Equitable Estoppel (Count IV)

Via Count IV, Plaintiffs contend that Defendant should be estopped from denying several oral promises that it made, and that Plaintiffs are entitled to specific performance and damages based on those promises. As best the Court can glean from the Amended Complaint, the alleged "promises" include two statements Defendant made before signing the LOI and two statements it made after signing. Defendant's alleged promises prior to signing the LOI were that: (1) it would not "shop" the offer; and (2) if Plaintiffs signed the LOI, then Defendant would also sign and the parties would "have a deal." (Am. Compl. ¶¶ 8, 9) The alleged promises after signing were Defendant's repeated assertions that the parties "had a deal and that [it] would be preparing the

5

purchase and sale agreement."³ (Id. at ¶ 13) These statements are insufficient to state a claim for either equitable or promissory estoppel.

First, as to the equitable estoppel claim, the Court notes that "equitable estoppel is a defense, not a cause of action." Weaver v. New England Mut. Life Ins. Co., 52 F. Supp. 2d 127, 134 (D. Me. 1999). Indeed, it is a "well settled principle that estoppel is 'available only for protection, and cannot be used as a weapon of assault.'" Waterville Homes, Inc. v. Me. Dep't of Transp., 52 F. Supp. 455, 457 (Me. 1991) (quoting Dickerson v. Colgrove, 100 U.S. 578, 581 (1879)). Thus, Plaintiffs cannot state a claim for equitable estoppel.⁴ See Weaver, 52 F. Supp. 2d at 134 (dismissing offensive equitable estoppel claim).

Second, regarding the promissory estoppel claim, the Court concludes that neither specific performance nor other damages are available based on the alleged facts. Under Maine's construction of promissory estoppel, a party will be estopped from denying the enforceability of "[a] promise which [that party] should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." Harvey v. Dow, 962 A.2d 322, 325 (Me. 2008) (quoting Restatement (Second) of Contracts § 90(1) (1981)). In cases involving an alleged oral promise for the sale of land, the statute of frauds operates to preclude specific enforcement unless the party seeking such enforcement incurred a "substantial change in financial position in reliance on the promise." Forest City Chevrolet v.

---

³ As noted above, Defendant allegedly made this same statement twice. (Am. Compl. ¶ 13)

⁴ Even if Plaintiffs could offensively assert the doctrine of equitable estoppel in Maine, their claim would fail as a matter of law. Equitable estoppel requires the "misrepresentation of an existing fact." Chapman v. Bomann, 381 A.2d 1123, 1127 (Me. 1978). Unlike the doctrine of promissory estoppel, it cannot be established by "mere promises or statements as to the future." Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc., 707 A.2d 1311, 1319 (Me. 1998). Here, the first two statements can only be characterized as "promises or statements as to the future." Id. Moreover, the third and fourth statements did not involve the "misrepresentation of an existing fact." Chapman, 381 A.2d at 1127. At the time of these assertions, the parties, in fact, had "a deal" in the form of the signed LOI, and any statement that Defendant "would be preparing" a purchase and sale was a "promise[] or statement[] as to the future." Chrysler Credit Corp., 707 A.2d at 1319. (Am. Compl. ¶ 13)

6

Waterford of Portland, LLC, 180 F. Supp. 2d 234, 235 (D. Me. 2002) (citing Chapman v. Bomann, 381 A.2d 1123, 1129 (Me. 1978)). See Sullivan v. Porter, 861 A.2d 625, 634 (Me. 2004) (holding specific performance available on oral promise for the sale of land where the plaintiffs invested "substantial … time and money" in reliance on promise); Nappi v. Nappi Distribs., 691 A.2d 1198, 1200 (Me. 1997) (courts will enforce oral promise to convey land where "donee has made substantial improvements to the land in reliance upon the promise to convey the land" (quoting Tozier v. Tozier, 437 A.2d 645, 648 (Me. 1981)) (internal quotation marks omitted)). Plaintiffs' alleged changes in position—reducing the listing price of their Montana land and incurring "interest costs on money in escrow"—certainly do not rise to the requisite level to overcome the statute of frauds. See Forest City Chevrolet, F. Supp. 2d at 235 (dismissing promissory estoppel claim for sale of land where no substantial change in position occurred). (Am. Compl. ¶ 48)

To the extent Plaintiffs also seek other damages such as "interest costs on money in escrow," they have still failed to state a claim for promissory estoppel. (Id.) Specifically, they have not alleged facts demonstrating that any of the four alleged promises are anything other than "illusory." Larson v. Johnson, 196 F. Supp. 2d 38, 40 (D. Me. 2002). A required element of promissory estoppel is that there be a "promise" allegedly relied upon. Harvey, 962 A.2d at 325 (quoting Restatement (Second) of Contracts § 90(1) (1981)). However, according to the Restatement, "[a] promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances." Restatement (Second) of Contracts § 77 (1981). Put another way, words "which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." Id. at § 77 cmt a. All of the alleged promises here fall into this unenforceable "illusory" category. Larson, 196 F. Supp. 2d at 40.

The first alleged promise, that Defendant would not "shop" Plaintiffs' offer, is illusory because Defendant reserved the right to reject that offer at any time and solicit others. (Am. Compl. ¶ 8) The second promise, that the parties would "have a deal" if they signed the LOI, is unenforceable because it refers to a document that, by its plain terms, allows Defendant to consider other offers and is "not binding." (Am. Compl. ¶ 9; Ex. A to Am. Compl.) Moreover, the third and fourth alleged promises, that the parties "had a deal and that the Defendant would be preparing the purchase and sale," are illusory because they are consistent with the LOI and contemplate the need for additional, as yet undefined, terms for any agreement to become binding. See Larson, 196 F. Supp. 2d at 40 (finding promise to pay promisee a "fair" price unenforceable). Cf. Gagne v. Stevens, 696 A.2d 411, 416 (Me. 1997) (holding that oral promise for sale of land was not "specific enough to enforce" because it failed to describe property and left terms to be agreed upon). (Am. Compl. ¶13) Consequently, Plaintiffs have not adequately pled a promissory estoppel claim for either specific performance or other damages and Count IV must be dismissed.[5]

### C. Negligent Misrepresentation & Fraudulent Misrepresentation (Counts V & VI)

Plaintiffs last contend that Defendant's actions amounted to both negligent and fraudulent misrepresentation. However, the Court concludes that the facts as pled fail to state a claim for either of these torts.

---

[5] Because the Court dismisses the promissory estoppel claim on these grounds, it need not rule on whether Plaintiffs have adequately pled facts showing that Defendant should have "reasonably expect[ed]" its statements to induce detrimental reliance. Harvey v. Dow, 962 A.2d 322, 325 (Me. 2008) (quoting Restatement (Second) of Contracts § 90(1) (1981)). However, the Court notes its skepticism that they have done so. Although the Amended Complaint alleges that Defendant "reasonably expected" that its actions would cause detrimental reliance, and that Plaintiffs' "reliance" on those actions "was reasonable," these appear to be exactly the type of "threadbare factual allegation[s]" the Court need not credit. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action" (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009))). (Am. Compl. ¶¶ 39, 40) Further, the ancillary factual allegations in the Amended Complaint—including the expressly non-binding language of the LOI—do not seem to bolster these assertions such that they appear less speculative, but rather tend to weaken them. See Penalbert-Rosa, 631 F.3d at 595-596. Thus, the Court is unconvinced that it could draw a "reasonable inference that the defendant is liable for the misconduct alleged" even if the alleged promises were enforceable. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012).

To plead a claim for negligent misrepresentation a plaintiff must aver facts demonstrating that: "(1) there was a transaction in which Defendant had a pecuniary interest, (2) Defendant provided false information to Plaintiff[] in connection with the transaction, (3) without exercising reasonable care or competence, and (4) Plaintiff[] justifiably relied on that false information in that transaction." Bradley v. Kryvicky, 547 F. Supp. 2d 210, 221 (D. Me. 2008) (citing Rand v. Bath Iron Works Corp., 832 A.2d 771, 774 (Me. 2003)). Fraudulent misrepresentation, on the other hand, requires facts showing: "(1) that [one party] made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing [another party] to act in reliance upon it; and (5) [the other party] justifiably relied upon the representation as true and acted upon it to [its] damage." Flaherty v. Muther, 17 A.3d 640, 654 (Me. 2011) (alterations in original) (quoting Me. Eye Care Assocs. P.A. v. Gorman, 942 A.2d 707, 711 (Me. 2008)). "Pecuniary loss is an essential element of proof in both negligent and fraudulent misrepresentation claims. Pecuniary loss consists of any loss of money or loss of something which money could acquire." Veilleux v. Nat'l Broad. Co., Inc., 8 F. Supp. 2d 23, 31 (D. Me. 1998) (internal citations and quotations omitted). Additionally, "under Maine law, 'the fundamental test [for both tort and contract recovery] is one of reasonable foreseeability: if the loss or injury for which damages are claimed was not reasonably foreseeable under the circumstances, there is no liability.'" Anderson v. Hannaford Bros. Co., 659 F.3d 151, 162 (1st Cir. 2011) (alteration in original) (quoting Horton & McGehee, *Maine Civil Remedies* § 4 – 3(b) (3) (4th ed. 2004)).

As an initial matter, to the extent Plaintiffs assert that their damages consisted of "reduc[ing] the price of some of their ranch land in Montana" their claims for both fraudulent and negligent misrepresentation must be dismissed. (Am. Compl. ¶ 14) As alleged, this mere price

9

reduction does not amount to a "loss of money or loss of something which money could acquire" and, therefore, is not pecuniary in nature. Veilleux, 8 F. Supp. 2d at 31. Further, Plaintiffs' claim for damages based on "interest costs on money in escrow" also fails as a matter of law. (Am. Compl. ¶ 48) The Court concludes that any such "interest costs" are unrecoverable because they are too remote from Defendant's alleged statements and are not reasonably foreseeable. See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 660 F. Supp. 2d 94, 101 (D. Me. 2009) (finding "overdraft fees or loan interest or … bank fees" unforeseeable where sustained by defendant store's customers who changed bill-paying arrangements due to store's failure to protect financial data). See also Anderson, 659 F.3d at 167 n.12 (rejecting contention that "the question of foreseeability vel non" should always go to the jury and finding that the district court was "correct to consider initially foreseeability as a question of law"). Counts V and VI are therefore dismissed on the ground that the damages alleged are unrecoverable as a matter of law.[6]

As an alternative ground for dismissing the fraudulent misrepresentation claim, the Court concludes that Plaintiffs' factual allegations are insufficient to state a claim under the heightened

---

[6] The Court also notes that none of the four allegedly misleading statements appear to constitute a "false representation of present fact." Berry v. WorldWide Language Res., Inc., 716 F. Supp. 2d 34, 48 (D. Me. 2010) (explaining that fraudulent and negligent misrepresentation "both require that the defendant make a false representation of present fact"). As a general rule, under Maine law, neither "opinions as to future events" nor "puffing" or "trade talk" constitute false representations of present fact. Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc., 976 F.2d 58, 65 (1st Cir. 1992) (holding that defendant franchisor's statements that it would "be just as committed to the motorcycle market as it had been in the past" and that new products would "cause an increase in sales" were not assurances as to specific facts but rather puffing and opinion). However, Maine courts have created an exception to these general rules whereby "in appropriate circumstances," such as where a plaintiff is "at the mercy of the defendant," statements of opinion or promises of future performance can become "sufficiently akin to averments of fact as to be actionable." Kearney v. J.P. King Auction Co., Inc., 265 F.3d 27, 35 (1st Cir. 2001) (internal citations and quotations omitted). Although this exception, the so-called "*Shine* exception," has typically arisen in the employment context, it has recently been applied to cases involving commercial transactions. Packgen v. BP Expl. & Prod., Inc., 957 F. Supp. 2d 58, 87 n.83 (D. Me. 2013) (discussing cases). The Court doubts that the statements involved here fall into this excepted category and finds them more akin to those previously found unactionable by the First Circuit. See Schott, 976 F.2d at 65. See also Packgen, 957 F. Supp. 2d at 87 n.83 (noting that the *Shine* exception "remains an exception, not the rule" and explaining why wholesale application of the exception outside employment context could be problematic).

pleading standard required by Federal Rule of Civil Procedure 9(b).[7] Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this standard, a complaint must specify "the time, place, and content of an alleged false representation." Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017) (quoting United States ex rel. Heineman-Guta v. Guidant Corp., 718 F.3d 28, 34 (1st Cir. 2013)). A complaint must also "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.)). In other words, Plaintiffs must plead a "basis for inferring scienter." Id. Here, Plaintiffs' particulars demonstrate no reasonable basis for drawing an inference of scienter.

Plaintiffs essentially contend that Defendant's statement that "we get out of [LOIs] all the time" shows that its earlier statements were intentionally misleading. (Am. Compl. ¶ 51) Specifically, they assert that Defendant made those statements—including that it would not "shop" an increased offer, that the parties "had a deal," and that it "would be preparing" a purchase and sale—without the intention to follow through, and merely to induce Plaintiffs to increase their offer so that it could obtain more money elsewhere.[8] (Id. at ¶¶ 8, 13, 51) Notwithstanding the Court's skepticism that any of the earlier statements actually constitute false representations of present fact,[9] the Court cannot infer scienter based on Defendant's later statement about LOIs. Defendant made that statement after it had accepted another offer, which it was entitled to do under

---

[7] Defendant did not raise Rule 9(b) in its Motion to Dismiss or Reply Memorandum. The Court does so sua sponte.

[8] One of the reasons this argument strains credulity is that Defendant stated that the parties "had a deal" and that it "would be preparing" the purchase and sale *after* Plaintiffs increased their offer. (Am. Compl. ¶ 13) It is, therefore, illogical to suggest that Defendant made such a statement intending to induce Plaintiffs to increase their offer.

[9] See supra notes 4 and 6.

11

the terms of the LOI, and in response to Plaintiffs' assertion that the LOI precluded such an action. In that context, it was clearly an expression of disagreement with Plaintiffs' interpretation of the LOI, not an indication of any earlier intent as to the allegedly misleading statements. Under Rule 9(b), Plaintiffs must point to specifics demonstrating that "statements made were more than tempered predictions about the future that later proved incorrect." Suna v. Bailey Corp., 107 F.3d 64, 69 (1st Cir. 1997). Plaintiffs have failed to do so here, based on Defendant's statement about LOIs or any other fact, and thus Rule 9(b) serves as an alternative ground for the dismissal of Plaintiffs' fraudulent misrepresentation claim (Count VI).

## IV. CONCLUSION

For the reasons explained herein, the Court GRANTS Defendant's Motion (ECF No. 18) and dismisses Plaintiffs' Amended Complaint (ECF No. 17) in its entirety.


SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 8th day of November, 2018.